

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*One Saint Andrew's Plaza*
*New York, NY 10007*

January 13, 2023

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Jayquan Smith*, **S1 21 Cr. 280 (AKH)**

Dear Judge Hellerstein:

    Although only twenty four years old, Defendant Jayquan Smith has built a troubling record of violence. In the span of six months, Smith tried to kill rival gang members on at least three occasions – on November 21, 2020, on December 21, 2020, and on April 21, 2021. As a member of the 800 YGz, a violent New York City street gang, Smith repeatedly chose to shoot at others in order to advance his position in the gang. Smith presents an overwhelming danger to the community. For this reason, among others, a term of imprisonment between 205 and 235 months' imprisonment, as calculated by the Plea Agreement, is sufficient but no greater than necessary to achieve the purposes of sentencing in this case.

    **I.    Factual Background**

    Since 2020, the New York City Police Department and the Drug Enforcement Agency have been investigating the 800 YGz criminal organization, as a result of numerous acts of violence that were committed by members of the 800 YGz and rival gang members in the Bronx. PSR ¶ 24.

    The 800 YGz are a gang that engages in an array of racketeering activity to further the gang's interests and reputation, including acts of violence, attempted murder, robbery, narcotics distribution, and acts involving wire fraud, among other things. PSR ¶ 24. Members and associates of the 800 YGz use violence and threats of violence against individuals associated with rival gangs. PSR ¶ 26. The 800 YGz also promote the gang on social media sites such as Facebook and Instagram by posting messages, comments, videos, and photographs referring to, among other things, shootings, firearms, drug dealing, and acts of wire fraud. PSR ¶ 26. Below are messages from the defendant's Facebook account in which he discusses committing acts of violence against the "opps," which is a term 800 YGz members use to refer to rival gang members:

Hon. Alvin K. Hellerstein                                                                                                  Page 2
January 13, 2023

> The Opps Told Me we be going to hard 🎯 We Be shooting to much 💥 We Be Going Toooo Far 🚑🚑🚑🚑 (May 1, 2020)
>
> N*** start lighting fire works again Ima let this 40 off show ya'll something bout (June 17, 2020)
>
> If I get killed & u wanna retaliate...don't let my family or nobody tell you "that's not what he would've wanted"....they lying asses... 🤫 GO SPIN DA BLOCK!! (September 9, 2020)
>
> YOU CANT RUN WHEN WE SHOOT 🏃 ♂ (September 24, 2020)
>
> YOU CANT RUN WHEN WE SHOOT (October 1, 2020)

In addition to acts of violence, members of the 800 YGz have also furthered the goals of the gang by engaging in acts of wire fraud through the submission of fraudulent applications to collect unemployment insurance benefits. PSR ¶ 29. Below are messages from Smith's Facebook account relating to his involvement in this unemployment insurance scam:

> Who wanna make money no scam no credit card just need state ID (June 11, 2020)
>
> Everybody gone be in jail once unemployment find out n**** aint never had a job (June 15, 2020)
>
> Who DIDN'T File for UE? I got 200 For U Rn Gottan be Fresh ID & social? (November 28, 2020)

In late 2020 and early 2021, within the span of six months, Smith engaged in three shootings, each designed to advance the reputation of the 800 YGz and enhance his position in the gang. Each of these shootings is discussed below:

*First*, on November 21, 2020, Smith shot at a group of rival gang members standing in front of 2311 Southern Boulevard, a building associated with a rival gang in the Bronx. The shooting is captured on surveillance video which shows Smith taking the public bus to the building and then exiting the bus with a firearm in hand. The video appears to show Smith ducking (as if someone were shooting at him), and then Smith returning fire, shooting multiple times. Included below are screenshots from the bus video surveillance system, which shows Smith's distinctive neck tattoo and Smith in possession of the gun while on the city bus.

Hon. Alvin K. Hellerstein  Page 3
January 13, 2023





    Two live rounds and two shell casings were recovered from the scene of the shooting. The shell casings were a ballistics match to shell casings recovered from Smith's second shooting on December 21, 2020, discussed below.

    *Second*, on December 21, 2020, Smith and another 800 YGz associate, Gil Medrano, shot at gang rivals in the vicinity of 768 East 179th Street in 800 YGz territory. The shooting is captured on surveillance video. Smith shoots in the direction of a car before passing the gun to Medrano and running into another building, 2048 Mapes Avenue. NYPD officers later found Smith and Medrano in the building. Medrano, who was in possession of a gun, a live round, a shell casing, and marijuana, was arrested. A screenshot of Smith with the gun, in a distinctive red jacket, is included below:

Hon. Alvin K. Hellerstein  Page 4
January 13, 2023



*Third*, on April 21, 2021, Smith was in possession of a black Beretta .380 caliber firearm in the Bronx.  Smith discharged the gun, and then attempted to flee from the NYPD, who had observed Smith discharge the gun.  Smith was later arrested by the NYPD

**2. The Charges, Plea Agreement and Guidelines**

On April 22, 2021, Smith was charged in a one-count Complaint with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), in connection with his possession of a firearm on April 21, 2021.

On May 6, 2021, the indictment, 21 Cr. 280 (the "Indictment"), was filed against Smith, as well as co-defendants Rashien Jackson, Daquan Murphy, Derick Murphy, James Bell, Hassan Simmons, and Jonathan Odenthal.  In the Indictment, Smith was charged with one count of participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); one count of attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), (a)(5), and 2, in connection with the November 21, 2020 shooting (Count Seven); one count of use of a firearm, which was discharged, in connection with the attempted murder charged in Count Seven, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii) and 2) (Count Eight); one count of attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), (a)(5), and 2, in connection with the December 21, 2020 shooting (Count Nine); and one count of use of a firearm, which was discharged, in connection with the attempted murder charged in Count Nine, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii) and 2) (Count Ten).

On May 27, 2021, a superseding indictment, S1 21 Cr. 280 (the "Superseding Indictment"), was filed against Smith and others, in which Smith was also charged in Count Twelve with being a felon in possession of a firearm on April 21, 2021, in violation of 18 U.S.C. § 922(g).

On June 22, 2022, Smith appeared in Magistrate Court and pled guilty, pursuant to a Plea Agreement, to Counts Seven and Ten of the Superseding Indictment.  In connection with his allocution on Count Seven, Smith admitted that, "On November 21st, I possessed a gun and fired

Hon. Alvin K. Hellerstein  Page 5
January 13, 2023

it at someone with the intent to kill that person." Plea Tr. 15. Similarly, with respect to his allocution on Count Ten, Smith admitted that, "On December 21st, I possessed a gun and shot at rival gang members in an attempt to kill." Plea Tr. 15. As to both Counts, Smith admitted that he committed these activities as part of his activities as a gang member, and that by doing so, he maintained his position in the 800 YGz. Plea Tr. 16.

In addition to his guilty plea, the defendant also admitted in the Plea Agreement that from in or about 2010 up to and including in or about 2021, he participated in a racketeering conspiracy known as the 800 YGz, and that he possessed a black Beretta .380 caliber firearm in the Bronx on or about April 21, 2021. Plea Agreement 2 n.1.

The Plea Agreement calculated an offense level of 30 and a Criminal History Category of III, resulting in a guidelines range of 205 to 235 months' imprisonment, with a mandatory minimum term of imprisonment of 84 months on Count Ten to run consecutively to any other term of imprisonment imposed.

In the PSR, the Probation Department calculated a different guidelines range based on a finding that the defendant is a Career Offender, in light of a 2016 youthful offender conviction for attempted robbery in the second degree. PSR ¶ 58. According to Probation, the 2016 conviction adds three criminal history points (which results in a total of eight points), and also makes Smith a Career Offender, resulting in a Criminal History Category of VI. In light of this, Probation calculates the guidelines as 168 to 210 months', to be followed by a mandatory 84 months' for Count Ten for a total range of 252 to 294 months, which is increased to 262 to 327 months pursuant to U.S.S.G. § 4B1.1(c)(3).

## II. A Sentence Between 205 to 235 Months' Imprisonment Is Necessary

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in 18 U.S.C. § 3553, which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

Here, these factors weigh in favor of a sentence between 205 and 235 months' imprisonment.

*First*, the nature and circumstances of the offense weigh in favor of a lengthy term of imprisonment. Smith was a member of a violent street gang and perhaps even more troubling, he committed three separate shootings in the span of six months. On November 21, 2020, he shot at

Hon. Alvin K. Hellerstein  Page 6
January 13, 2023

rival gang members. On December 21, 2020, he again shot at rival gang members. And on April 21, 2021, he discharged his firearm at others, prior to being arrested. This pattern of using violence, repeatedly, and attempting to kill other people is serious, and justifies a lengthy term of imprisonment.

*Second*, Smith's history and characteristics cut in favor of a sentence between 205 and 235 months' imprisonment. Although quite young, Smith is a Career Offender based on two attempted robberies he committed in 2014 and 2015. According to the criminal complaint, in the first robbery, on December 16, 2014, Smith struck the victim in the face with a closed fist multiple times and kicked the victim in the face multiple times with his feet. PSR ¶ 58. In the second robbery, Smith and another individual approached the victim, removed a bag containing a pink vest from the victim's hand and struck the victim on the left side of his forehead with a firearm. The victim suffered from a bleeding laceration to the forehead, substantial pain and experienced fear for his physical safety. PSR ¶ 59. Smith thus has demonstrated a pattern of violence that has only gotten more serious in the past few years. In other words, quite troublingly, Smith was assaulting people in 2014 and 2015, and now, in 2020 and 2021, is shooting at and attempting to kill gang rivals. Thus, his personal history and characteristics warrants a substantial sentence between 205 and 235 months' imprisonment.

*Third,* the compelling need for both specific and general deterrence justifies a sentence of 205 and 235 months' imprisonment. Despite defense counsel's suggestion to the contrary, Smith has yet to demonstrate a commitment to living a law abiding life. His disciplinary record while incarcerated proves as much. According to a Bureau of Prison's report, the defendant incurred a disciplinary infraction on January 31, 2022, for Refusing to Obey an Order, Being Insolent to Staff Member, and Being in Unauthorized Area and was sanctioned to a 120-day loss of visitation and email privileges and a 90-day loss of phone and commissary privileges. Additionally, Smith incurred a disciplinary infraction on June 30, 2021, for Fighting with Another Inmate and was sanctioned to a 30-day disciplinary segregation (which was suspended) and a 90-day loss of email and visitation privileges. PSR ¶ 17. Thus, despite his claims otherwise, Smith has not matured, and a lengthy prison sentence is necessary to deter future criminal activity. Equally important are the goals of general deterrence. Smith committed three attempted murders in furtherance of a violent gang. His sentence should send a message to other gang members that participating in a gang and committing acts of violence will result in lengthy prison terms.

*Finally*, the need to protect the community is paramount in this case and weighs heavily in favor of a prison term of 205 and 235 months' imprisonment. Smith repeatedly committed shootings in broad daylight in public settings, causing a great risk that his actions would harm innocent bystanders. Smith is lucky that no one was injured as a result of his actions. But luck alone does not justify a reduced sentence. In order to protect the community from further acts of violence by Smith, this Court should sentence the defendant to a term of imprisonment between 205 and 235 months' imprisonment.

Hon. Alvin K. Hellerstein  Page 7
January 13, 2023

### IV. Conclusion

For the reasons set forth above, a sentence between 205 and 235 months' imprisonment would be fair and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: __/s/_____
Alexandra Rothman / Jim Ligtenberg
Assistant United States Attorneys
(212) 637-2580 / (212) 637-2665

cc: David Touger, Esq. (by ECF)