N2s2SmiS kjc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4            v.                            21 Cr. 280 (AKH)

5   JAYQUAN SMITH,

6               Defendant.

7   ------------------------------x       Sentencing

8                                         February 28, 2023
                                          11:05 a.m.
9

10  Before:

11              HON. ALVIN K. HELLERSTEIN,

12                                        District Judge

13

14                        APPEARANCES

15
    DAMIAN WILLIAMS
16       United States Attorney for the
         Southern District of New York
17  BY:  ALEXANDRA ROTHMAN
         Assistant United States Attorney
18

19  DAVID TOUGER
         Attorney for Defendant
20

21

22

23

24

25

N2s2SmiS kjc

```
1              (Case called)
2              THE DEPUTY CLERK:  Counsel, please state your
3      appearances for the record.
4              MS. ROTHMAN:  Good morning, your Honor.  Alexandra
5      Rothman for the United States.
6              THE COURT:  Good morning, Ms. Rothman.
7              MR. TOUGER:  Good morning, your Honor.  David
8      Touger --
9              THE COURT:  Remain seated.
10             MR. TOUGER:  Good morning, your Honor.  David Touger
11     for Mr. Jayquan Smith.
12             THE COURT:  Good morning.  Good morning, Mr. Smith.
13             Mr. Smith, I am deeply sorry that we could not
14     arrange our facilities to allow you to visit your son in the
15     funeral home and to tend to his funeral.  There are few things
16     more sad than when a son precedes the death of a parent, and
17     not to be able to see that person is a very serious matter.  I
18     hope you forgive me.
19             Let's start now.  I am here to sentence you,
20     Mr. Smith.  Have you read the presentence investigative
21     report?
22             THE DEFENDANT:  Yes.
23             THE COURT:  Have you discussed it with Mr. Touger?
24             THE DEFENDANT:  Yes.
25             THE COURT:  Mr. Touger, are there any factual errors
```

N2s2SmiS kjc

1    that you want me to correct?

2              MR. TOUGER:  Not at this point, your Honor.

3              THE COURT:  At any point?

4              MR. TOUGER:  They have all been made correct, your

5    Honor.

6              THE COURT:  Okay.

7              Government?  Ms. Rothman?

8              MS. ROTHMAN:  I have, your Honor.  No corrections.

9              THE COURT:  The facts are as stated in the presentence

10   investigative report.

11             Before I get into the calculation, Mr. Smith pleaded

12   guilty to Count Seven and Ten.  One of those counts is a count

13   that charges a crime for having a gun in furtherance of a

14   violent crime.  Since the violent crime is an attempt, how can

15   we consider it a crime of violence as contemplated by the

16   Supreme Court in *United States v. Taylor*, a decision of 2022?

17             MS. ROTHMAN:  Your Honor, I am not sure the Court

18   needs to engage in the attempt analysis given that the charge

19   is also an assault with a dangerous weapon.  And so I think

20   the Court could find that the assault with a dangerous weapon

21   would qualify as a crime of violence.

22             THE COURT:  The crime he pled guilty to was Count

23   Ten.

24             MS. ROTHMAN:  He pled guilty to Count Seven and Count

25   Ten.  Count Seven charges attempted murder and assault with a

N2s2SmiS kjc

1    dangerous weapon in aid of racketeering under 18 U.S.C.

2    1959(a)(3), (a)(5), and 2.

3             THE COURT:  The crime with which he is charged in

4    Seven is racketeering.  The caption adds "assault with a

5    dangerous weapon," but there is no allegation that that is the

6    crime.  That is a means for committing the crime and not a

7    categorical element of the crime, because racketeering can be

8    accomplished in various ways that involve nonviolent

9    activities.

10            MS. ROTHMAN:  Your Honor, if I may, Count Seven

11   charges the defendant with a violent crime in aid of

12   racketeering, not with just racketeering, like a racketeering

13   conspiracy.  That's Count One.  And so, your Honor, I would

14   submit that Count Seven, the violent crime in aid of

15   racketeering, is a crime of violence such that Count Ten --

16   actually let me clarify the defendant pled guilty to two

17   counts—Count Seven and Count Ten.

18            Count Seven charges a violent crime in aid of

19   racketeering.  There is no issue with that charge, as I see it,

20   even in light of *Taylor*.

21            Count Ten charges a use of a firearm in connection

22   with a different crime of violence, which is actually the

23   crime of violence charged in Count Nine.  That's for the

24   December 21, 2020 shooting.

25            If the Court is concerned --

N2s2SmiS kjc

1          THE COURT:  Give me a moment.

2          MS. ROTHMAN:  Yeah, no problem.

3          (Pause)

4          THE COURT:  Again, it raises the same problem.

5          MS. ROTHMAN:  Your Honor, I would want to look back

6     at the law on what the government's position is with respect

7     to attempted murder following the *Taylor* decision.  *Taylor*, if

8     I recall, involved Hobbs Act attempted robbery.  I don't

9     believe it involved an attempted murder offense.

10         THE COURT:  That's true, but the nature -- robbery by

11    its nature is a violent crime.  It's a crime that, through

12    force, coercion, or the like, takes property from another.  An

13    attempt is not necessarily a violent act.

14         MS. ROTHMAN:  Your Honor, I think——and, again, if the

15    Court would like briefing, I think we could adjourn today's

16    sentencing and put in a letter to address the Court's

17    questions with respect to this, but --

18         THE COURT:  On the present record, I would not add

19    any element -- I would not add the mandatory minimum to Count

20    Ten.

21         MS. ROTHMAN:  So, your Honor, I think, then, in light

22    of that --

23         THE COURT:  I would take that into consideration in

24    punishing for Count Seven.

25         MS. ROTHMAN:  Your Honor, I think what I would like

N2s2SmiS kjc

1    to do is brief for the Court the question the Court has raised

2    with respect to the attempted murder, the 924(c) based off of

3    an attempted murder.  My recollection is that our office is

4    still taking the position that it is a crime of violence, but I

5    would like to put that --

6              THE COURT:  I believe that's right.  I believe that

7    you take that position.

8              MS. ROTHMAN:  But I would like to --

9              THE COURT:  You took that position with all attempts.

10   Indeed, I felt the same way.

11             MS. ROTHMAN:  I think our position, again, I would

12   like to put it in writing for the Court's review.  I do think

13   that the defendant has pled guilty to a crime that carries a

14   mandatory minimum sentence, he's pled guilty to engaging in

15   multiple shootings, and it's important that the Court

16   considers all of that in advance of sentencing.

17             THE COURT:  He did, he did, he certainly did, and I

18   accepted the plea.  But the legal sufficiency of an indictment

19   is not satisfied by a plea.  If the count is legally

20   insufficient, that can be raised at any time.

21             MS. ROTHMAN:  I understand that, your Honor.

22             THE COURT:  We might as well get it raised now.

23             If I sentence on the basis that Count Ten stands as

24   it is with this seven-year mandatory minimum, and even though

25   I might sentence to a larger amount under Count Seven, it

1    would be back from the Second Circuit if the Second Circuit

2    agrees with *Taylor* and extends it to this kind of a case.  So

3    we might as well resolve it now.

4              MS. ROTHMAN:  Okay.

5              THE COURT:  We can resolve it in the wrong way, it's

6    also true, but what do you think, Mr. Touger?

7              MR. TOUGER:  Your Honor, just to add my two cents,

8    that is the government position, which is why the plea offer is

9    where it is.  And they are still maintaining that to this day,

10   as being, Ms. Rothman stated, *Taylor*, they are saying --

11             THE COURT:  What are you saying, that you want to take

12   back your plea?

13             MR. TOUGER:  No.  I'm not saying that, your Honor.

14   That's why we took the plea, because we don't -- the

15   government had their position, but the Court can solve the

16   problem itself.  As the plea agreement states and we all know,

17   the Court has last say over what is legal and what is not.

18             THE COURT:  I missed you.  Sorry.  Say that again.

19             MR. TOUGER:  The plea agreement and we all know that

20   the Court has the last say on what the guidelines will be and

21   what is legal and what is not.  So I would agree with the

22   Court that there is no reason to brief it because we are just

23   going to be back here where we are right now.  The government

24   is going to have that position, which we feel is incorrect,

25   which obviously the Court feels is incorrect.  So I don't think

N2s2SmiS kjc

1   wasting time, money, and effort in briefing is necessary.  I

2   think the Court should move forward with its suggestion.

3          THE COURT:  I think the briefing is necessary because

4   I have to decide -- the issue I have to decide in the best way

5   I can, and it will be better to have a consideration of the

6   government's position and yours.

7          MR. TOUGER:  Well --

8          THE COURT:  There is another question, too, that I

9   need to explore, and that is whether there is an upward

10  adjustment for using a gun.  I know that Mr. Smith was first

11  charged with being a felon in possession.  That charge has

12  disappeared in the superseders.

13         MR. TOUGER:  Yes.

14         MS. ROTHMAN:  I wouldn't say it disappeared.  The

15  defendant -- in the superseding indictment, the

16  felon-in-possession charge was included.  That is the S1

17  indictment.  The defendant's plea contemplates that he pled

18  guilty to two counts, and while he didn't plead guilty to the

19  felon-in-possession charge, it was included in a footnote that

20  he acknowledged and admitted that on the day in question he in

21  fact possessed a gun and discharged it.

22         THE COURT:  Well, that's part of the crime that you

23  are charging in Ten.

24         MR. TOUGER:  Correct.

25         MS. ROTHMAN:  Not exactly, your Honor.  The crime in

N2s2SmiS kjc

1    Count Ten is based off of a December 21, 2020 shooting.  The
2    crime that the defendant was charged with being a felon in
3    possession for was a shooting on April 21 of 2021.
4              THE COURT:  But you want me to take all three
5    incidents into account when I sentence.
6              MS. ROTHMAN:  I think the Court should, your Honor,
7    yes.
8              THE COURT:  Yes, so -- as related acts.
9              MS. ROTHMAN:  Correct, your Honor.
10             THE COURT:  So I am asking, am I taking it into
11   consideration, is there an upward adjustment for a use of a
12   gun if I don't consider the gun charge as a charge in itself
13   because it's --
14             MR. TOUGER:  Well, my suggestion would be no, because
15   the plea agreement doesn't contemplate that in its
16   calculations, that he should -- the Court can certainly
17   consider that.
18             THE COURT:  What's no?
19             MR. TOUGER:  Well, that there shouldn't be another --
20   added points to his guidelines calculation.  The Court can
21   certainly consider those acts.
22             THE COURT:  I don't understand.  I get what you mean.
23   I can consider those acts, but without adjusting the
24   guidelines.
25             MR. TOUGER:  Exactly, your Honor.

N2s2SmiS kjc

<pre>
 1              THE COURT:  Yes.  I can use it, for example, in

 2   varying upwards from the guidelines.

 3              MR. TOUGER:  Excuse me?

 4              THE COURT:  I can use it, for example, in varying

 5   upwards from the guidelines.

 6              MR. TOUGER:  I would hope the Court wouldn't but, yes,

 7   it could.

 8              THE COURT:  I know you want me to give him seven

 9   years.

10              MR. TOUGER:  That's correct, your Honor.

11              THE COURT:  But your thinking may be in error, too,

12   because you are assuming that that is a legally sufficient

13   charge.

14              MR. TOUGER:  Well, no, your Honor, my thinking was

15   taking everything -- when you look at the case from a 30,000

16   foot level I did not want to go to trial because the

17   guidelines would have been obviously a lot higher and the

18   punishment would have been a lot higher.  This was the plea

19   that was offered, so that's why we took it.  My feeling is

20   that seven years is not -- is a crime -- is a time that sort

21   of fits the crime, so whether it's the mandatory minimum or

22   not, I think seven years is adequate punishment.

23              THE COURT:  For all of the reasons you have given in

24   your submission.

25              MR. TOUGER:  Exactly.
</pre>

N2s2SmiS kjc

1          THE COURT:  Okay.  I understand.

2          So we should postpone this.

3          MS. ROTHMAN:  We are happy to put in a letter that

4   articulates why we still believe that --

5          MR. TOUGER:  Your Honor, I --

6          MS. ROTHMAN:  -- a crime of violence predicated on an

7   attempted murder, a violent crime in aid of racketeering based

8   on attempted murder is sufficient.  I think that would be

9   helpful so the Court has all the information in advance of

10  sentencing.

11         THE COURT:  I agree.

12         You were saying, Mr. Touger?

13         MR. TOUGER:  I just don't see the value in the

14  government repeating its position in a letter.  We are just

15  going to be back here with the Court in the same instance.

16  The law is the law.  The government is going to say they don't

17  agree with it.  I'm going to say I agree with it.  And

18  unfortunately, your Honor, you wear the robes and you have to

19  make your decision.

20         What I would suggest is that we continue with the

21  sentencing for the very reason that Mr. Smith has been in the

22  MDC for 25 months and the MDC is just a horrible place, still

23  is, even after COVID, it still is basically they sit in

24  lockdown almost every day and --

25         THE COURT:  He would like to be assigned to the

N2s2SmiS kjc

1    facility --

2              MR. TOUGER:  We would like to move the case forward

3    and --

4              THE COURT:  -- where he will serve.

5              MR. TOUGER:  Right.

6              And I think the ultimate decision the Court is going

7    to make is it can't use the mandatory minimum.  I understand

8    that, but it won't change my suggestion of what the sentence

9    should be and I don't think it will change the government's

10   position of what they think the sentence should being and,

11   frankly, I don't think it would change the Court's mind of

12   what it thinks the sentence should be.

13             THE COURT:  I'm going to go ahead and sentence now,

14   and I will hold that Count Ten refers back to the crime

15   alleged in Count Nine.  Count Nine alleges a crime of

16   racketeering through a criminal enterprise, performing acts

17   involving violent and nonviolent offenses.

18             For example, a distribution of controlled substances

19   in violation of Title 21 would be considered a nonviolence

20   offense and there are other nonviolent offenses, including the

21   fraud committed on the New York disability insurance.

22             So on racketeering although it is alleged that it was

23   committed in a certain way, which is a violent way, as alleged,

24   in consideration for a payment or a promise to pay something

25   of pecuniary value from the gang and for the purpose of

N2s2SmiS kjc

1    enhancing his position in the gang, knowingly assaulted an

2    individual with a dangerous weapon and knowingly attempted to

3    murder and aided and abetted --

4              MR. TOUGER:  Your Honor, nobody was injured at all in

5    Mr. Smith's counts.

6              MS. ROTHMAN:  Your Honor --

7              THE COURT:  Attempted to murder.

8              MS. ROTHMAN:  Your Honor --

9              MR. TOUGER:  No assault, there was no assault, either.

10   There was an attempted assault.

11             MS. ROTHMAN:  Your Honor, if the --

12             THE COURT:  I'm looking at the allegation.

13             MS. ROTHMAN:  Your Honor, if the --

14             THE COURT:  Knowingly assaulted.

15             MR. TOUGER:  Yes, but Mr. Smith did not plead to

16   any -- in none of Mr. Smith's shootings was anybody hit.

17             MS. ROTHMAN:  He pled to attempting to kill, that's

18   correct.

19             THE COURT:  Okay.

20             MR. TOUGER:  Attempting to assault.

21             MS. ROTHMAN:  If the Court is inclined to, I guess,

22   vacate the Count Ten guilty plea, I think it is important that

23   the government puts in legal authority on its position as to

24   why the Court should not do that.  That is for a couple of

25   reasons.

N2s2SmiS kjc

1          Without Count Ten, the maximum sentence that the

2     Court could impose changes quite dramatically in this case.

3     There is a 20-year maximum sentence on Count Seven.  With

4     Count Ten, that maximum can go much higher.  Probation has

5     recommended quite a lengthy sentence, consistent with the

6     government's recommendation, and I don't think it is

7     appropriate to --

8          THE COURT:  Probation has recommended ten years.

9          MS. ROTHMAN:  No, your Honor.  Probation has

10     recommended --

11          MR. TOUGER:  17 years, your Honor.

12          MS. ROTHMAN:  -- 17 years, your Honor, which I

13     recognize is less than 20 years, but I do think that the Court

14     should get it right, and I think it would be helpful for the

15     government to provide the legal authority as to why --

16          THE COURT:  I don't think there is binding legal

17     authority.

18          MR. TOUGER:  There is no legal authority for Count

19     Ten, and my position would be, your Honor, even if you vacate

20     Count Ten, the Court still has leeway to go anywhere it wants

21     to go in sentencing.

22          THE COURT:  Yes.

23          MS. ROTHMAN:  I'm not sure the defense can argue that

24     the Court should vacate Count Ten under the plea agreement.

25          MR. TOUGER:  I can't.  I am just saying -- I'm not

N2s2SmiS kjc

1    arguing that --

2                THE COURT:  I brought it up, right?

3                MS. ROTHMAN:  Yes, your Honor.

4                THE COURT:  I brought it up, and I am sentencing

5    today as if Count Ten is a legally insufficient count because

6    attempt is not a crime of violence and racketeering is not

7    necessarily a crime of violence applying the categorical

8    approach involved in the Supreme Court decisions.  All right.

9    So that's where we are with that.

10               Now I am going to make the findings that I need to

11   make as to the guidelines.

12               I think the calculation that both sides have come to

13   in their agreement is 30, and the probation department wants

14   to up that by considering Mr. Smith a career offender.  I

15   decline to do that.  Again we run into attempts and whether

16   they are violent offenses or not.  So I think we have a level

17   of 30 followed by eight criminal history points.  Six have

18   been calculated by the parties for the youthful offender

19   attempts, robbery attempts, and two more because this crime

20   was committed while Mr. Smith was still involved in parole

21   under his previous offense.  That puts us in offense level 30,

22   criminal history category IV, which yields a range of custody

23   of 135 to 168 months.

24               Before I finish off on this, is there an adjustment,

25   upward adjustment because a gun was used?

N2s2SmiS kjc

```
1          MR. TOUGER:  Sorry, your Honor.  I didn't hear the

2     question.

3          THE COURT:  Is there an upward adjustment because a

4     gun was used in the commission of the crime?

5          MS. ROTHMAN:  Your Honor --

6          THE COURT:  I did a quick look, and I couldn't

7     find --

8          MS. ROTHMAN:  Your Honor, I don't know the answer to

9     that question.  If I could just go back to the career offender

10    calculation, I think for purposes of the guidelines the

11    defendant's attempted robbery conviction still qualifies as a

12    crime of violence, and that's under 4B1.2.

13         THE COURT:  Yes, I know it says that, but I'm

14    applying what the Supreme Court has been doing.  I hesitate to

15    call him a career offender.  And I don't think it's apt

16    because he is too young and I wouldn't call him a career.  He

17    was a youthful offender.  Whether he straightens out or not, I

18    don't know, but I don't think career offender fits the bill,

19    and I'm not going to find it.

20         MR. TOUGER:  Your Honor, as far as the other question,

21    I would say the government is bound by the plea agreement as

22    far as the other question.

23         THE COURT:  Well, you tell me, Mr. Touger.

24         MR. TOUGER:  Just like I can't argue -- I couldn't

25    argue without the Court bringing up the dismissed Count Ten,
```

N2s2SmiS kjc

1    they can't argue to change the guidelines.  They are locked in

2    by the plea agreement.

3              THE COURT:  Well, I'm not sure because I'm changing

4    things so much that they are not.  Customarily if you have a

5    count that charges the illegal use of a gun, then you don't

6    make the upward adjustment.  What is the crime where it is an

7    upward adjustment?

8              MS. ROTHMAN:  I'm not sure I follow the Court's

9    question, your Honor.

10             THE COURT:  There is a place in the guidelines where

11   you make a two-level upward adjustment.  For an aggravated

12   assault, you make a four- or five-point upward adjustment.  An

13   aggravated assault has not been charged.

14             MS. ROTHMAN:  Is the Court thinking about the, like,

15   2A1.2 guidelines for aggravated assault with a dangerous

16   weapon?  I'm not sure I understand what section of the

17   guidelines the Court is referring to.

18             THE COURT:  I'm not.  I'm hunting.

19             2A1.2, secondary, is second degree murder.

20             MS. ROTHMAN:  2A --

21             THE COURT:  Aggravated assault, assault with intent

22   to commit murder is 2A2.1.

23             MS. ROTHMAN:  Right.  And --

24             THE COURT:  An aggravated assault is 2A2.2 and the

25   upward adjustment for use of a gun is 2A2.2(b)(2).

N2s2SmiS kjc

1          MS. ROTHMAN:  Right.  But because the defendant has

2    agreed that 33 is the correct base offense level for Count

3    Seven, because it was -- it would have been first degree

4    murder, this is a premeditated attempt to kill, your Honor,

5    there is no enhancement for gun, possession of a gun, and so I

6    don't think there would be any additional points there.

7          If I thought I understood the Court's questions, that

8    related to the April shooting which is sort of considered

9    relevant conduct in this plea agreement, I don't think, as

10   Mr. Touger noted, there is an upward departure from the

11   guidelines, but I do think the Court can vary in light of sort

12   of the repeat nature of the defendant's criminal acts.

13         THE COURT:  All right, so I find that the guidelines

14   yield at level -- I find that the net offense level is 30, that

15   the criminal history category is IV, and that the recommended

16   range of custody is 135 to 168 months.  Do you agree with that?

17   Your answer is, no, you don't.

18         MS. ROTHMAN:  I don't, your Honor.

19         THE COURT:  All right.  But assuming I am correct in

20   my analysis with Count Ten, do you agree?  I guess --

21         MS. ROTHMAN:  I'm not sure I do either, because I

22   think the Court should be -- in light of the Court's

23   questions, I think the defendant qualifies as a career

24   offender, and that's in light of his prior attempted robbery

25   convictions.

N2s2SmiS kjc

1              THE COURT:  All right.

2              How about you, Mr. Touger?

3              MR. TOUGER:  I agree with the Court.

4              THE COURT:  I find 135 to 168 months as the indicated

5    range.

6              Now, I think the guideline provision for supervised

7    release is one to three years, am I correct?

8              MR. TOUGER:  Your Honor, I'm sorry.  I missed that

9    question.

10             THE COURT:  What is the extent of supervised release?

11             MR. TOUGER:  I believe it is one to three years, your

12   Honor.

13             THE COURT:  Yes.

14             MS. ROTHMAN:  I think that's right, your Honor.

15             THE COURT:  I so find.

16             I have read all your materials, Mr. Touger, but make

17   believe I haven't and you can talk to me about your client.

18             MR. TOUGER:  Thank you, your Honor.  I won't make

19   believe you haven't, because I know the Court has and the

20   Court has digested it, so I will try not to repeat myself.

21             THE COURT:  Well, it's true.  I can summarize it.

22             Mr. Smith grew up in an impoverished household.  His

23   father was missing.  His mother had to provide for I think four

24   children.  She couldn't take care of the kids and provide.  Her

25   ability to provide was quite meager.  And so Mr. Smith lived

N2s2SmiS kjc

1    with his grandmother until she died, and he went back to his

2    mother.

3            He made various efforts to lead a productive life,

4    but he was unable to do so.  Mr. Touger would have me believe

5    that the circumstances that caused him to get involved with

6    gang life and gang crimes were circumstances of necessity

7    because of inability to provide, first, when he was younger

8    because of conditions I mentioned before and, second, when he

9    was older, when the pandemic caused a loss of his employment

10   and he couldn't find other employment.

11           The government points out that Mr. Smith did not just

12   simply engage in a crime of theft, which would be perhaps

13   somewhat understandable in Mr. Touger's analysis to find money

14   for food or other necessities, but it was a crime of violence,

15   attempted robbery, and the circumstances of those robberies

16   were pretty nasty.  Given that and given difficulties of

17   fighting in jail, the government feels that I should be

18   considering Mr. Smith to the sentence that was agreed to in

19   the agreement.  That is something between 205 and 235 months.

20           All right, Mr. Touger, so we have a level between

21   seven --

22           MR. TOUGER:  Thank you.

23           THE COURT:  -- years and 17 years or 18 years.

24           MR. TOUGER:  Thank you, your Honor.

25           Your Honor, just picking up where the Court left off,

N2s2SmiS kjc

```
1    I want to refer the Court to the studies that I mentioned in
2    my sentencing letter and how Mr. Smith's early life and
3    teenage life affected his decision-making, really, abilities
4    as he grew older.  And the studies -- and this is from a
5    Harvard study of many thousands of people -- show that it is
6    almost like a post-traumatic stress disorder, in that their
7    brain capacity is really weakened.  It is not just the
8    emotional problems that are faced by that, it is the fact that
9    their actual ability to think through and make valid decisions
10   is affected by their upbringing and their circumstances.  And
11   I think that's very important for Courts to start to consider
12   in these situations as many young black, Hispanic, white
13   impoverished people come before the Court in these situations.
14          THE COURT:  But most living in that kind of
15   circumstance are honest and don't commit crimes.
16          MR. TOUGER:  I agree, your Honor.  I'm not -- I don't
17   want the Court to take my argument as an excuse or a reason,
18   but it's as an explanation, and that some people do have the
19   willpower to fight their way through and make it through and
20   some people find some male role model to look up to.  Some
21   people have very strong family situation that gets them
22   through, yes.  Many, many people get through this situation in
23   a completely lawful manner.  But that doesn't discount the
24   fact that what these studies show is that people who are
25   brought up in this situation really do not have the brain
```

N2s2SmiS kjc

1    capacity that people who are brought up in my situation, and I

2    don't know how the Court was brought up, but I would guess in

3    the Court's situation.  And even though my father passed away

4    when I was nine years old, I grew up in a situation where I

5    had family and family friends that sort of took over that

6    role.  I had many male role models to look up to, whereas

7    Mr. Smith just didn't.  His male role models were, as I said

8    in my letter, the people who ran in the street, who got to him,

9    and unfortunately he did not have the willpower and the

10    strength to fight back from that, and I think the Court should

11    first take that into consideration.

12   A.   I think also the Court should take into consideration that

13   he has spent 25 months in the MDC, which means that he began

14   his sentence -- his incarceration during the height of the

15   COVID virus, and the MDC was even worse than it is now then.

16   It was just a horrible place to be.  And I'm sure the Court has

17   heard these arguments and knows full well, so I won't go into

18   detail about everything that was going on back in the jail over

19   two years ago.

20        Mr. Smith got COVID twice since he's been in the MDC.

21   But to be completely honest, the conditions haven't improved

22   much.  Even now that COVID numbers have waned, the conditions

23   still haven't.  Most people -- most days, I should say, the

24   MDC is still in lockdown.  They have a lack of manpower, which

25   I don't truly understand since they closed the MCC, why they

N2s2SmiS kjc

1    didn't bring enough employees over to the MDC, but they

2    haven't.  And that is the excuse they continue to give, that

3    they don't have the manpower to allow inmates any kind of

4    life.  They are literally locked down over 23 hours almost

5    every day, and it is just inhumane to do that to people.

6    There are no programs, or the programs keep getting

7    interrupted.  There is very little athletic activity.  There is

8    very little -- Sunshine, forget it; it just doesn't exist.  The

9    conditions are poor.  They are overcrowded.  They are

10   understaffed.

11          It is amazing.  I have people who are in the MDC who

12   were moved to Essex County to be incarcerated there, and they

13   just -- they feel like they have gone to a country club when

14   they got to Essex County.  The people in Essex County who have

15   never been to the MDC feel like they are in the worst place in

16   the world.  But everything is relative.  And Mr. Smith has

17   spent 25 months already in the MDC.

18          But that's not even the worst punishment.  And

19   granted, again, this is not -- Mr. Smith realizes he is in

20   jail because of his actions, and he takes full responsibility

21   for those actions, as you heard from him in his letter and will

22   hear from him after I am done, but not only -- his child was

23   quite young when he went into jail.  He missed his whole

24   child's life, basically, since he is incarcerated.  And then,

25   even though the Court had ordered that he be allowed to watch

N2s2SmiS kjc

a videotape of his son's funeral, he was not allowed to do

that.  Basically he did not get to witness his son's funeral or

wake or anything else.

         THE COURT:  This is his two-year-old son.

         MR. TOUGER:  His two-year-old son, yes, your Honor.

And as the Court already mentioned, I can't think of anything

worse than that.  And I have to say, to Mr. Smith's credit, he

took it much better than his family did.  His family was quite

angry.  There were numerous phone calls to me during the day,

complaining and yelling, but Mr. Smith himself was like, this

is my fault.  I did what I did, and this is what I have to

live through.  He was much calmer than I was and than his

family was.

         THE COURT:  You have noticed, I'm sure, that the

psychological impact of the crime and the punishment is worse

for the family than it is for the defendant.

         MR. TOUGER:  Agreed, your Honor.  No doubt.  But I

still was very impressed with how Mr. Smith, unlike a lot of

clients I have represented, took full responsibility for why

he was not at his son's funeral, whereas I have a lot of

clients who would have been yelling and screaming at me and

quite angry at the Court right now, and Mr. Smith --

         THE COURT:  Let me be open with you, so you can focus

your remarks.  I am looking at he is 24 years old, so he's had

very little time to develop a life.  But what I see in his

N2s2SmiS kjc

| | |
|---|---|
| 1 | life are terrible things.  So at a time when he was hungry |
| 2 | and not getting enough food, he commits a robbery and what |
| 3 | does he get out of the robbery?  He gets out of the robbery a |
| 4 | jacket. |
| 5 | MR. TOUGER:  Are you talking about the state -- the |
| 6 | one he has youthful offender treatment on? |
| 7 | THE COURT:  Right.  He got out, Take your jacket off |
| 8 | and beat him up with his fist, kicking him in the face multiple |
| 9 | times.  And the second offense is much the same, it's a down |
| 10 | jacket that someone was carrying. |
| 11 | MR. TOUGER:  Your Honor, it -- |
| 12 | THE COURT:  He took it away from him and beat him up |
| 13 | very badly.  These are characteristics of violence. |
| 14 | MR. TOUGER:  I understand that, your Honor.  And |
| 15 | first of all, the jackets are worth a lot of money to be sold. |
| 16 | So the fact that he took a jacket doesn't mean that he wasn't |
| 17 | getting money for it to support himself.  But even -- |
| 18 | THE COURT:  But it's, it's -- |
| 19 | MR. TOUGER:  The violence part of it I understand, |
| 20 | your Honor. |
| 21 | THE COURT:  And you don't need to have an education |
| 22 | to know that it's wrong to take something from another and |
| 23 | it's wrong to beat up another person and it's wrong to kick |
| 24 | the other person in the face.  You don't need education. |
| 25 | MR. TOUGER:  You don't need education for that, your |

N2s2SmiS kjc

1    Honor, and Mr. Smith certainly knows what he did was wrong.

2    He's never said what he did was right, called for, productive,

3    or anything else.  What the studies -- and I don't think the

4    studies relate that this is the right activity.  What the

5    studies show is that their minds don't necessarily make the

6    same connection that yours and mine do.  And it's very hard

7    for us to put ourselves in that position.

8           THE COURT:  The problem I get is an inference that if

9    things are bad, crime is okay.

10          MR. TOUGER:  No, I'm not --

11          THE COURT:  If things are bad violence is okay.

12          MR. TOUGER:  Your Honor, I don't want the Court to

13   get that that's my argument.  I don't think he should go

14   unpunished.  I think seven years is a lot of time.  Seven

15   years would basically be one-third of his life almost.

16          THE COURT:  But he used a gun on three different

17   occasions.

18          MR. TOUGER:  And I'm going to get to that, your

19   Honor.  The gun violence that he is charged with here -- and,

20   again, I don't condone it, I don't condone anybody having a

21   gun, I don't understand when our society will get to the point

22   that it will learn that and just ban bullets.  Forget the guns.

23   There are too many guns on the street now.  If they ban them

24   now, it wouldn't do anything.  Just stop the production of

25   bullets and we would solve the problem.

N2s2SmiS kjc

| | |
|---|---|
| 1 | THE COURT:  If you are in a gang and you want a gun |
| 2 | you can get a gun. |
| 3 | MR. TOUGER:  Yes, exactly that's why this whole |
| 4 | idea -- |
| 5 | THE COURT:  Legally or illegally. |
| 6 | MR. TOUGER:  Exactly, your Honor.  That's why, just |
| 7 | to veer off the track for a second, I don't think gun control |
| 8 | is the right idea.  I think just banning the production of |
| 9 | bullets, then we won't have any gun violence, because a gun is |
| 10 | worthless without bullets. |
| 11 | But, anyway, getting to the point here, your Honor, |
| 12 | he was not -- prior he did rob people when he was a much |
| 13 | younger person.  His gun violence here is all gang related. |
| 14 | It's not against John Q. Public.  It's not against the |
| 15 | law-abiding citizens of his neighborhood or anything else. |
| 16 | It's one gang against another gang.  I'm not saying that's |
| 17 | right. |
| 18 | THE COURT:  In society, where there are many innocent |
| 19 | people just minding their own business and walking on the |
| 20 | street, and all of a sudden involved in a gang fight -- |
| 21 | MR. TOUGER:  And that did not happen here.  Nobody got |
| 22 | hit here. |
| 23 | THE COURT:  It often happens. |
| 24 | MR. TOUGER:  My point only is, your Honor, when we |
| 25 | are judging crimes and making sentences, we are have in a very |

N2s2SmiS kjc

1    strange business.  We have to judge -- there is gradations of

2    all crimes.  And what makes a crime worse is if he went and

3    shot John Q. Public for a jacket.  That would be a -- is one

4    way of using a gun.  If he is threatened by another gang and

5    uses a gun, while still a crime and still wrong and still

6    something that shouldn't happen, it's a lesser crime than

7    taking a gun to John Q. Public.  That's the only point I am

8    making.

9              And the Court has already sentenced a codefendant of

10   his, Mr. Bell, to seven years for a shooting --

11             THE COURT:  The city streets belong to the public,

12   not --

13             MR. TOUGER:  Agreed.

14             THE COURT:  -- to a gang.

15             MR. TOUGER:  I couldn't agree more.  But the Court

16   has already sentenced Mr. Bell to seven years; and in his

17   shooting, two people got hit.  Now, granted, he only has one

18   shooting that he is charged with.  Mr. Smith has three

19   shootings.  I understand that.  But it would be a joke for us

20   to think -- stand here and think that Mr. Bell, that was the

21   only shooting that Mr. Bell ever did and Mr. Bell got seven

22   years and two people got hit in his shootings.  Other people

23   charged in his indictment are getting much less than that.

24             So I am not asking you to give Mr. Smith probation or

25   two or three years.  What I am saying, your Honor, is that

N2s2SmiS kjc

1   seven years is a hefty sentence, and he has already been

2   punished harsher in these first two years than anybody could

3   have contemplated when getting arrested or when people put up

4   the codes.  Forget even the MDC conditions that he has lived

5   through and the fact that he's lost his son and will never be

6   able to spend another day with his son and didn't get to go to

7   his son's final services.

8           Now granted that is his fault and he admits that and

9   he has said that to me on more than one occasion, since this

10  happened both in phone calls and today, but that doesn't take

11  away from the fact that it did happen, and that that is

12  weighing on his mind that what he did and is punishment to

13  him.  He understands that his actions have caused him to miss

14  out on something and now he is -- and his actions of

15  threatening the public safety with a gun deserve to be

16  punished, no doubt.

17          But I think the break between you and I, your Honor,

18  is I think seven years is an extensive sentence.  He will be

19  30 years old when he gets out of jail.  He will have spent

20  almost one third of his life in jail.  That is an extensive

21  sentence, and I would ask the Court to find that that meets its

22  requirements, that it take into consideration both punishment

23  and mercy, and fits the crime to Mr. Smith.

24          Mr. Smith, while certainly has committed crimes in

25  the past, has also demonstrated to the Court that he can lead

N2s2SmiS kjc

1    a productive life.  he had put the gangs and criminal activity

2    behind him and was leading a productive life until the

3    circumstances sucked him -- literally sucked him back in.  And

4    I think the Court, while certainly can't -- doesn't condone it,

5    and there is no excuse for his actions about going back into

6    criminal conduct, the Court can see some light in Mr. Smith

7    that he did spend two or three years really being a public

8    asset, working, taking care of his family.

9         His son was, you know, born with numerous problems,

10   including autism.  It was not an easy, you know, situation.

11   And so I think the Court should give -- there is ample to not

12   give him credit for, but there are some things in his life to

13   give him credit for, and I think the Court can rest assured

14   that Mr. Smith has now really learned his lesson.  He

15   certainly seems to have convinced me, and not every client I

16   have has made that jump and has convinced me of that, but

17   Mr. Smith has certainly convinced me, and I have been doing

18   this 38 years.  I know the Court has been doing it longer than

19   me, but I have been doing this 38 years, not two or three, and

20   Mr. Smith has certainly, I think, taken to heart what he has

21   done and how it has punished society, punished his family and

22   now will punish him.  But I think he has learned his lesson and

23   I don't think he will appear in another court.

24        THE COURT:  He was punished pretty clearly in state

25   court, two crimes of attempted robbery.  You would think he

N2s2SmiS kjc

1    would have learned his lesson, right?

2              MR. TOUGER:  We would have hoped, and I think he did,

3    and I think he proved that by getting out and doing --

4              THE COURT:  You don't learn your lesson by further

5    crime.  He was not alone in losing his job in the pandemic.

6              MR. TOUGER:  I agree, your Honor, and again --

7              THE COURT:  I think we are repeating.

8              MR. TOUGER:  Yes, we are.

9              THE COURT:  Let me hear Mr. Smith.  You are allowed to

10   talk to me.  Pull the mic up.

11             THE DEFENDANT:  To address the Court, I take full

12   responsibility of my actions and everything I done in the

13   past; past when I did crimes that I did in the past, the state

14   crimes, probably crimes I didn't even get arrested for I

15   apologize for, and I take full responsibility.

16             I wrote a letter to address the Court, but it was

17   just speaking on like me bettering myself for me and my son

18   and getting out of New York.  But now, like, that happened,

19   like, I have to rewrite it, but I was dealing with the funeral,

20   being denied, I didn't have enough time.

21             THE COURT:  What happened to your son?  Did he get

22   sick.

23             THE DEFENDANT:  He had cancer.

24             THE COURT:  Cancer.

25             THE DEFENDANT:  Yeah.  So I didn't have enough time

1  to rewrite it because I was dealing with getting through this

2  and dealing with being denied.  But I knew being denied was my

3  fault because I'm incarcerated.  So I don't put that blame on

4  nobody but myself.  That's why I know now, like, I ain't going

5  to appear in front of no more judges.  I already missed out

6  too much time on my son's life——walking, talking and now this.

7  It's, like, I don't want to appear in front of more judges.  I

8  don't want to miss more time in my family's life.

9        That's pretty much it.

10       THE COURT:  Ms. Rothman.  Apart from Hassan Simmons,

11 have I sentenced anybody else?

12       MS. ROTHMAN:  Your Honor, I believe the Court

13 sentenced James Bell to seven years, which was the mandatory

14 minimum sentence in his case.

15       THE COURT:  And what's the difference?

16       MS. ROTHMAN:  Well, your Honor, Mr. Bell committed

17 one shooting.  Mr. Smith committed three.  I recognize that in

18 Mr. Bell's shooting two individuals were hit, and that's

19 obviously a fact that the Court can, and I'm sure did,

20 consider, although there was a plea to a mandatory minimum

21 sentence.  Mr. Smith is lucky that no one was killed during

22 his repeated acts of violence.

23       I want to respond to some of the suggestions by

24 Mr. Touger that this Court should care less about the

25 defendant's violence because it was only gang related.  So I

N2s2SmiS kjc

1    disagree with that strongly.

2              THE COURT:  So what?

3         MS. ROTHMAN:  But even if the Court were to put any

4    stock in that argument, which I don't think it should, this

5    defendant is going on a public bus, the same bus that

6    hard-working New Yorkers take to go to work, to see their

7    families, he is pulling out a gun——there is a photo of that in

8    our sentencing submission——hopping off the bus, and is

9    captured on video shooting at people.

10             And it didn't stop there.  He did it again and then in

11   April of 2021 --

12             THE COURT:  What gathers from this, that he had

13   formed an intention to do something, and it wasn't just

14   something on the spur of the moment because he got caught in

15   some kind of violent act.  He planned it --

16        MS. ROTHMAN:  Your Honor, this is a premeditated

17   attempt to kill.  The defense has stipulated to that

18   guidelines in the plea agreement, and it's repeated.  It's

19   repeated, and you know it's premeditated based upon the

20   surveillance video.  You know it is premeditated because he is

21   talking about his intent to kill the ops, the rival gang

22   members, on social media, and that's also in our sentencing

23   letter.

24             THE COURT:  Yes, I've read your sentencing letter.

25        MS. ROTHMAN:  So there is no argument here that, oh,

N2s2SmiS kjc

1   he got caught up in a moment, he was being shot at, so he

2   retaliated.  No.

3           THE COURT:  I don't think he is making that argument.

4           MS. ROTHMAN:  And that's simply belied by the facts,

5   your Honor.

6           THE COURT:  He is making the argument that twice he

7   tried to fit into society, things went wrong, he couldn't stay

8   with it, and now he will do it because he's learned his lesson.

9   That's basically his argument.

10          MS. ROTHMAN:  And I don't think the facts support

11  that, your Honor.  If I understand——and maybe I'm missing

12  something——what defense counsel is pointing to is that for a

13  period of time the defendant had a part-time job.  But, your

14  Honor, you can work and also be a gang member, and this

15  individual admitted to his membership in the gang, admitted to

16  acts of violence in furtherance of that gang.  There is really

17  nothing in this record to suggest he was trying to clean up

18  his life and do the right thing and then just fell back into

19  this.  What you instead see——and this goes back to his

20  robbery, so he was younger——is a pattern of escalating

21  violence.  Then it was robberies; now it's attempted murders,

22  shooting at people in the streets of New York.

23          And I will just note this, your Honor, the last

24  shooting, the April 2021 shooting, I remember learning about

25  that, we had an open investigation, we were preparing to

N2s2SmiS kjc

1    indict him and many of his codefendants for their membership

2    in the 800 YGz, and I get a phone call from a detective that I

3    know who just sees him on the street shooting at somebody out

4    of the blue.

5         They follow him.  They apprehend him.  They get the

6    gun.  We charge that on a complaint.  And then, as the Court

7    knows, we supersede in the indictment to add that as an

8    offense.  This is somebody who, if not stopped by these

9    charges, would have -- I don't want to say he would have

10   killed someone, because we don't know, your Honor, but I feel

11   fairly confident to say that his acts of violence would have

12   continued over the summer of 2021.

13        There is a problem with gang violence in New York

14   City, and it's because of people like the defendant who pull

15   out guns and shoot people and try to kill people on the

16   streets of New York.  And a seven-year sentence sends a

17   message that this Court doesn't care.  A seven-year sentence

18   would send the message that you can do this, and there are no

19   real consequences.

20        THE COURT:  How about a 14-year sentence?

21        MS. ROTHMAN:  Your Honor, I think that the guidelines

22   in the plea agreement --

23        THE COURT:  Ms. Rothman, how about a 14-year sentence?

24        MS. ROTHMAN:  Respectfully, your Honor, it's not

25   enough.

N2s2SmiS kjc

1          THE COURT:  That's a lot of years.

2          MS. ROTHMAN:  I understand that, your Honor.  There is

3     a public safety emergency.

4          THE COURT:  He will be 38 when he gets out.

5          MS. ROTHMAN:  Your Honor, this was repeated attempts

6     to kill.

7          THE COURT:  I understand.

8          MS. ROTHMAN:  There's a plea agreement that we

9     entered into.  The guidelines there are higher.  It's 205 --

10          THE COURT:  I don't think they are justifiable, the

11     guidelines.  I tell you this --

12          MR. TOUGER:  Your Honor, can I just respond?

13          THE COURT:  No.  You don't need to.

14          MR. TOUGER:  There is just one -- I have to make one

15     point, your Honor.  Derick Bell is Jayquan Smith.  Yes, they

16     only caught him with one shooting.  They are the same people.

17          THE COURT:  I'm punishing Jayquan Smith.

18          MR. TOUGER:  I understand that, but one factor the

19     Court must take into consideration is the fact what

20     codefendants got and Derick Bell and Jayquan Smith are the

21     same.  The only difference is that Derick Bell hurt two

22     people, actually hit two people.  The fact that Derick Bell

23     was given a plea to a seven-year count because he only was

24     charged with one act doesn't take into account the reality of

25     the situation that Derick Bell and Jayquan Smith were running

N2s2SmiS kjc

1   with the same people and doing the same thing and the

2   punishment should be the same.  The Derick Bell sentence has

3   just as much impact as the Jayquan Smith sentence.

4           THE COURT:  Well, maybe I was influenced by the pleas.

5   I have to be influenced by the plea.

6           MR. TOUGER:  But the Court --

7           MS. ROTHMAN:  Your Honor --

8           THE COURT:  I am --

9           MS. ROTHMAN:  -- if --

10          THE COURT:  -- discouraged by the Second Circuit in

11  punishing behavior that was not in relationship to the plea,

12  so I'm going to stick to the plea, and I think I've got two

13  things that I am thinking through here and I think I have

14  resolved it.

15          One is that these were really bad acts and there is a

16  necessity to gain respect of the community and to deter others

17  from doing things like this and to punish the individual

18  himself, to deter him.  And all of these suggest a very stiff

19  sentence.

20          On the other hand, he is a young man.  I believe that

21  everybody is remedial.  I mean that everyone's got the spark

22  of the divine in him, and it needs sometimes just to be fanned

23  and furthered to come out.  Maybe that's an idealist and

24  romantic belief, but a human life is a terrible thing to waste

25  in jail, and so I have to search for that which fits the crime

N2s2SmiS kjc

1   but also fits the prospects of remediation.

2              MS. ROTHMAN:  Your Honor, if --

3              THE COURT:  Yeah.

4              MS. ROTHMAN:  If I could just make two additional

5   points.  When you look at the 3553(a) factors, they all lean

6   in favor of a substantial sentence within the guidelines as

7   calculated by the government or the Court.

8              THE COURT:  And you think 14 years is not

9   substantial?

10             MS. ROTHMAN:  I don't, your Honor.  I think there are

11  a couple of ways you could conclude that.

12             If we are going to compare this to Mr. Bell, one

13  shooting gives you seven years, so let's times it by three and

14  make it 21.  Now, I'm not sure the Court should do that.  I

15  think the guidelines instruct when you are considering

16  similarly situated defendants you are talking about national

17  averages, not only the defendants in a particular case.  But

18  it can't be that the punishment for one is the punishment for

19  three.  And in fact --

20             THE COURT:  You are arguing under the guidelines that

21  I have not accepted.

22             MS. ROTHMAN:  I'm sorry, your Honor?

23             THE COURT:  You are arguing about guidelines that I

24  have not accepted.

25             MS. ROTHMAN:  Your Honor, I --

N2s2SmiS kjc

1          THE COURT:  I've accepted guidelines that go from 135

2    to 168 months, and I am proposing to sentence at the very top

3    of that guideline.

4          MS. ROTHMAN:  And I think your Honor has a basis to

5    go above the guidelines that the Court has proposed in light

6    of the repeat nature of the defendant's conduct.  Those

7    guidelines, your Honor --

8          THE COURT:  But that puts him into category IV and --

9    look, I could vary.  It doesn't really make a difference

10   whether it's 14 years or 15 years or 16 years.

11         MS. ROTHMAN:  Your Honor, I think there is a basis to

12   vary to the top of what the Court is allowed to do under the

13   20-year statutory maximum here, and that is for -- I think,

14   simply put, the guidelines that the Court calculated only

15   reflect one shooting.  That's the first shooting.  That's the

16   MTA bus shooting.  They do not account for the second

17   shooting.

18         Now, I recognize the Court has ruled on the 924(c),

19   but there is a December 21, 2020 shooting, and there is an

20   April 21, 2021 shooting.  Those are not reflected in the

21   guidelines nor is --

22         THE COURT:  All right.  I'm ready to --

23         MR. TOUGER:  Your Honor --

24         THE COURT:  I'm ready to sentence.

25         MR. TOUGER:  Okay.

N2s2SmiS kjc

1          THE COURT:  I think we have heard --

2          MR. TOUGER:  I would just say that one factor she is

3     forgetting to mention to the Court is the one that sentences

4     of codefendants must be taken into consideration and two

5     codefendants have been sentenced, one exactly the same as

6     Jayquan Smith, whether he did one shooting or three

7     shootings --

8          THE COURT:  I think you made the point.  I have it.  I

9     am ready to sentence.

10          So what is a sentence that is sufficient but not

11     greater than necessary to comply with the purposes that are

12     set out in more detail?  The nature and circumstances of the

13     offense certainly are an argument for a stiff sentence.  The

14     history and characteristics of the defendant argue the same

15     way.  A stiff sentence would reflect the seriousness of the

16     offense, promote respect for the law, and provide just

17     punishment for the offense, and the same with deterrence of

18     others and the individual.

19          That begs the question what is a stiff sentence?

20     There is no scientific methodology that can assure a judge

21     that he is sentencing leniently or severely or just right.

22     Truth is to say, I don't think I ever really get it just

23     right.  I think I am too lenient sometimes.  I think I am too

24     stiff sometimes.  I never get the satisfaction of feeling I did

25     just the right thing, and so here.

N2s2SmiS kjc

1              Mr. Smith, you are an intelligent man.  You have will
2      and you have strength, but you also have a weakness and that
3      weakness gets you on the street and causes you to do bad
4      things.  And if you continue to do that, you are going to get
5      killed or you will be in jail.  No way to lead a life.  You
6      suffered a terrible tragedy in the death of your son, but you
7      get on.

8              I am sentencing you to 168 months, which I consider
9      stiff——it's 14 years——which I think a sentence needs to be,
10     satisfying the conditions I read out in Section 3553(a).  That
11     brings you to a point where you get out of jail, you are 38
12     years old and, if you exercise good conduct, maybe a few years
13     earlier than that.  That may seem to you a long way off, but
14     life can be long.

15             You have written to me about how you have wanted to
16     turn yourself around, that you feel that you have seen enough
17     courts and done enough bad things.  Maybe.  But maybe you will
18     be tempted again.

19             I can't tell you that I feel confident that a 14-year
20     sentence is the right one.  I'm sure you feel it's too much,
21     and I'm sure that Ms. Rothman feels that it's too little.  But
22     I think it is the best I can do.  And what you need to do in
23     those 14 years is to understand that if you are back to your
24     old ways, it will be worse the next time.  And if you don't
25     get caught, you will get killed on the street.  Is that a way

N2s2SmiS kjc

1    to live?

2              You are fortunate in finding a woman who loves you,

3    and you have been together for a little while.  Whether

4    that -- I don't know how you continue your life, but you

5    continue.  You could find life, you could find hope, you could

6    find love, and you can live responsibly, and that's what you

7    need to do.

8              Following custody, I order a three-year period of

9    supervised release subject to the conditions set out in the

10   presentence investigative report.  The mandatory conditions on

11   page 25 I impose.  And since you have been around drugs and

12   you have a history of drug use, I will not suspend the

13   provision for drug testing.

14             The standard conditions set out on page 26 and 27 are

15   imposed.

16             I call your attention very much to the point of

17   association with other people whom you know have committed

18   crimes.  Choose your friends.  Choose your friends so that you

19   are not tempted by what your friends do, that do bad things.

20             The special conditions provide for treatment

21   programs, and the first two paragraphs, I impose them.  There

22   is a search requirement in the third paragraph on page 27.  I

23   impose that.  There is a fourth provision that you not

24   associate or interact in any way, including through social

25   media websites, with any gang members or associates,

N2s2SmiS kjc

1    particularly the gang you were involved in.  I impose that.

2           You will be supervised by the district of your

3    residence.

4           I am not imposing a fine.  Mr. Smith can't afford a

5    fine.

6           There is a mandatory special assessment of $200 -- no,

7    of $100 because I have invalidated one the counts.  There is a

8    mandatory special assessment of $100 which will be due upon

9    filing of the judgment.

10           Restitution is not applicable here.

11           MS. ROTHMAN:  No, your Honor.

12           THE COURT:  Anything, Mr. Touger.

13           MR. TOUGER:  Your Honor, I would only ask that the

14    Court recommend to BOP that they place him in an institution

15    close to New York.

16           THE COURT:  Can you repeat that?  I recommend what?

17           MR. TOUGER:  That BOP place him in an institution as

18    close to New York as possible.

19           THE COURT:  Yes, he should be, if possible,

20    institutionalized in a place close to New York to promote

21    visitation from his family.

22           Anything else, Mr. Touger?

23           MR. TOUGER:  No, your Honor.

24           THE DEPUTY CLERK:  Open counts, Judge.

25           THE COURT:  Not yet.

N2s2SmiS kjc

1          I advise you, Mr. Smith, that you have a right of

2      appeal.  You should discuss with Mr. Touger whether or not you

3      wish to appeal.  If you wish to appeal, Mr. Touger, I instruct

4      you to do so on a timely basis.

5          MR. TOUGER:  According to the plea agreement, your

6      Honor, he's waived his right --

7          THE COURT:  I'm not interested in the plea agreement.

8      That's for you to decide.

9          Mr. Smith, if you can't afford a lawyer, the

10     government will provide a lawyer free of charge.

11         Are there open counts, Ms. Rothman?

12         MS. ROTHMAN:  Yes, your Honor.  We would move to

13     dismiss them at this time.

14         THE COURT:  We should dismiss them.

15         MS. ROTHMAN:  And then, your Honor, I think I have

16     done this, but I will just note the government's objection to

17     the dismissal of Count Ten and also the finding that the

18     defendant is not a career offender.

19         THE COURT:  Well, I have already dismissed Count Ten

20     in effect, so I will dismiss Count Ten, and you can appeal if

21     you find error in that.

22         MS. ROTHMAN:  I think I am just noting for the record

23     that we object to the Court's dismissal of Count Ten.

24         THE COURT:  And if Count Ten is invalidated,

25     presumably you have another count as a felon in possession, so

N2s2SmiS kjc

1    I really don't know how to deal with the underlying counts.

2    All those that are subsumed in the present indictment other

3    than Count Ten or any previous indictment are dismissed.

4              MS. ROTHMAN:  I think that's sufficient, your Honor.

5              THE COURT:  Mr. Touger.

6              MR. TOUGER:  That's okay, your Honor.

7              THE COURT:  Okay.

8              Good luck to you, Mr. Smith.

9                              oOo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25